end of December each year, or just after January 1 of the following year, after the determination of the income for the year then closed.

No accounts of the taxpayer were ruled down at June 30, except the profit and loss account, and no transfer was made to the surplus account until January 1 of each year.

The books of account of the taxpayer were kept on a calendar year basis.

The Commissioner computed the income on the basis of a fiscal year ending June 30 of each year, and determined an overassessment for 1918 of $4,995.68 and aggregate deficiencies for 1919 and 1920 of $11,963.28, or a net deficiency of $6,967.60.

### DECISION.

The tax should be computed on the basis of calendar years. Final determination will be settled on 10 days' notice, under Rule 50.

---

### APPEAL OF BEACH & SWEET, INC.

Docket No. 2381.    Submitted May 13, 1925.    Decided November 20, 1925.

*Harry P. Cross, Esq.*, for the taxpayer.
*Edward C. Lake, Esq.*, for the Commissioner.

Before GREEN and LANSDON.

This appeal is from the determination of a deficiency in income and profits taxes for the years 1919 and 1920 in the amount of $8,017.78. The taxpayer claimed to be a personal service corporation and prepared and filed its income-tax returns for the years in question upon that basis. The Commissioner declined to give the taxpayer personal service classification and the deficiency above mentioned resulted.

### FINDINGS OF FACT.

Prior to 1906, Beach & Sweet, a copartnership, was engaged in the insurance business in Providence, R. I. At the same time and in the same city the Henry W. Cooke Co., a corporation, was engaged in the real estate loan and insurance business. Each of the companies was the agent for several reputable insurance companies. It was deemed advisable to consolidate the insurance branch of the Cooke Co. with Beach & Sweet, and this was effected in 1906 by organizing a corporation known as Beach & Sweet, Inc. This company took over all the insurance business of both the Cooke Co. and Beach & Sweet, a copartnership.

In exchange for the businesses transferred to it, the corporation issued 544 shares of its capital stock of the par value of $100 each. The holdings of the various stockholders were as follows:

|  | Shares. |
|---|---|
| Henry W. Cooke Co | 272 |
| Joseph W. Lewis (stockholder in Cooke Co.) | 1 |
| Benjamin B. Adams (stockholder in Cooke Co.) | 1 |
| Francis M. Smith (stockholder in Cooke Co.) | 1 |
| Joseph G. Henshaw (stockholder in Cooke Co.) | 1 |
| Robert G. Holt (employee of Cooke Co.) | 1 |
| Charles H. Beach | 266 |
| C. L. Beach (son of Charles H. Beach) | 1 |
| Total | 544 |

Henshaw, Lewis, Adams, Smith and Holt were stockholders in name only. The stock held by them was transferred to them only for the purpose of qualifying them as directors of the corporation. The beneficial ownership of the stock held by them was in the Cooke Co. and the dividends on said stock were paid to said company.

The H. W. Cooke Co. during the years in question did considerable business in the sale and renting of real estate, placing of loans and mortgages, caring for estates, making appraisals of property, and handling auction sales of real estate. In the handling of this business it frequently found or made opportunities to turn insurance business to the taxpayer, with the result that a substantial part of the business of the taxpayer came from or through the Cooke Co.

Through its ownership of a majority of the stock in the taxpayer, the Cooke Co. selected and elected five out of the seven directors of the taxpayer and through these directors had absolute control and management of all of its affairs and the selection and election of officers.

Charles H. Beach and C. L. Beach devoted practically all of their time to the business of the taxpayer. Joseph G. Henshaw devoted a considerable portion of his time to the business, and for his services the Cooke Co. was paid the sum of $8,250 per annum. Other stockholders or employees of the Cooke Co., including those who held qualifying shares in the taxpayer company, devoted time to the insurance business of the taxpayer but looked to their dividends or salaries from the Cooke Co. for remuneration for the services rendered.

In the year 1919 the taxpayer paid $19,724 as commissions to nonstockholder employees. A considerable portion of this amount was paid to Holt, who at that time was the record, but not the beneficial, owner of one share of stock. The commissions were paid at the rate of 40 per cent of the premiums secured. Charles H. Beach was the only stockholder who received compensation for services rendered to Beach & Sweet, Inc.

When the taxpayer corporation was organized, in determining the amount of stock that should be issued to Charles H. Beach and to the Cooke Co., the agencies owned by the partnership were valued at $5,000, upon the theory that the renewals which would follow naturally from the ownership of the agencies were worth at least that amount. The Cooke Co., through Henshaw, received stock of the par value of $26,700 in exchange for the business turned over. The evidence shows this business to have been actually worth that amount of money.

The financial statement for the year 1919 shows:

| | |
|---|---:|
| Cash on hand | $12,848 |
| Accounts receivable | 83,945 |
| Accounts payable | 78,099 |

The financial statement for the year 1920 shows:

| | |
|---|---:|
| Cash on hand | $31,210 |
| Accounts receivable | 80,231 |
| Accounts payable | 90,632 |

The premiums due from the insured were usually paid within 30 days, though in many instances longer time was given or taken. The taxpayer was required to remit to the insurance companies in 60 days. A large part of the money necessary for the remittances to the insurance companies was collected from the insured before the remittance was made.

### DECISION.

The determination of the Commissioner is approved. *Appeal of Hanley-Ried & Co.*, 2 B. T. A. 315.

---

## APPEAL OF WATSONTOWN BRICK CO.

Docket No. 3580. Submitted June 30, 1925. Decided November 20, 1925.

During the year 1919 the stock of the taxpayer to the extent of from 72.96 to 89.97 per cent was owned or controlled by the Paxton Brick Co. Thereafter, the president and vice president of both companies acquired further stock from a quiescent minority, bringing the stock held or controlled to 92.64 per cent on November 3, and to 100 per cent on November 5. *Held*, that the taxpayer was affiliated with the Paxton Brick Co. from November 1, 1919, to the end of the year.

*J. A. Farber, C. P. A.*, for the taxpayer.
*P. S. Crewe, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1919 in the amount of $8,127.48. The